UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MISTY D.[1],

                                        Plaintiff,          19-CV-831-FPG

        v.                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

---

## INTRODUCTION

On July 21, 2015, Plaintiff filed an application for supplemental security income ("SSI")

and on July 27, 2015, she filed an application for disability insurance benefits ("DIB"), alleging

disability beginning on December 11, 2013 in both applications.  Tr.[2] at 225-32.   After the

applications were initially denied, Plaintiff timely requested a hearing. Tr. 136.  On May 29, 2018,

Plaintiff appeared by video with her attorney, Jean Murray, Esq., and testified before

Administrative Law Judge Melissa Lin Jones ("the ALJ").  Tr. 36-76.  A Vocational Expert

("VE"), Millie Droste, also testified at the hearing.  Tr. 70-76.  The ALJ issued an unfavorable

decision on July 5, 2018. Tr.16-28. Plaintiff then requested review by the Appeals Council, which

the Council denied on April 25, 2019, making the ALJ's decision the final decision of the

Commissioner.  Tr. 1-4.  Subsequently, Plaintiff brought this action pursuant to Title II and Title

XVI of the Social Security Act (the "Act") seeking review of the final decision of the

Commissioner which denied her applications for SSI and DIB.[3]  ECF No. 1.  Presently before the

---

[1] In accordance with the Standing Order dated November 18, 2020, regarding the identification of non-government parties in Social Security opinions, available at http://www.nywd.courts.gov/standing-orders-and-district-plans, Plaintiff is identified by her first name and last initial.

[2] "Tr." refers to the administrative record in the matter.  ECF No. 7.

[3] The Court has jurisdiction over this matter under 42 U.S.C. § 405(g).

Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 15, 22. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is GRANTED, the Commissioner's motion for judgment on the pleadings is DENIED, and the matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I.      District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[4] If so, the claimant is not disabled. If not, the ALJ proceeds to Step Two and determines whether the claimant has an impairment, or

---

[4] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to Step Three.

At Step Three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to Step Four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the SSA through December 31, 2015. Tr. 19. At Step One of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of December 11, 2013. *Id.* At Step Two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative joint disease of the lumbar spine, undifferentiated connective tissue disorder, and headaches. *Id.* She further found that Plaintiff's depression and anxiety, and the following were non-severe impairments:

> rule-out lupus, history of lupus, systemic lupus erythematosus, fibromyalgia, joint pain, chronic pain syndrome, myofascial pain syndrome, myalgia, cervicalgia, neck and shoulder pain, knee pain, hip pain, leg numbness, unspecified peripheral vascular disease, restless leg syndrome, anemia, pregnancy, dyspepsia, gastritis, acute gastric ulcer, abdominal pain, stomach pain, endometriosis, uterine fibroids, ovarian cysts, overactive bladder, Tietzes disease, abnormal liver function tests, fatty liver, dysphagia, thyroid disorder, post-concussion syndrome, peripartum cardiomyopathy, chest pain, murmurs, palpitations, dizziness, syncope, hypertension, dermatitis, sinusitis, dyspnea, chronic obstructive pulmonary disease ("COPD"), tobacco use disorder, smoking cessation, insomnia, sleep disturbance, fatigue, and vitamin deficiencies

Tr. 19.

At Step Three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 21. The ALJ then proceeded to determine that Plaintiff retained the RFC to perform a full range of light work defined by the regulations, except that she had to avoid concentrated exposure to extreme heat, cold, dust, fumes, odors, gases, and other pulmonary irritants. Tr. 21.

At Step Four of the sequential analysis, the ALJ found that Plaintiff could not perform any past relevant work, after which the ALJ proceeded to Step Five, where she determined that there

were jobs available in significant numbers in the national economy that a person of Plaintiff's age, education, and work experience could perform. Tr. 25-27. Specifically, the ALJ found that Plaintiff could work as a marker, cleaner (housekeeping), and cashier I. Tr. 27.

## II.   Analysis

Plaintiff advances several arguments in support of her motion. ECF No. 15-1. First, Plaintiff argues that the ALJ inappropriately assigned weight to the medical opinions of her treating physicians, and, as a result, formulated an RFC determination that was not supported by the record. ECF No. 15-1 at 14-22. Plaintiff also argues that the ALJ failed to make specific findings regarding the impact of stress on her employability and incorporate mental limitations into her RFC. ECF No. 22-27. Lastly, Plaintiff submits that the ALJ erroneously found her capable of performing light work despite the need to be off-task and absent from work. ECF No. 27 -29. For the reasons that follow, the Court agrees with Plaintiff.

"[T]he treating physician rule[5] generally requires deference to the medical opinion of a claimant's treating physician[.]" *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). Even though the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of opinion evidence for claims filed after March 27, 2017, and changed the way the Commissioner considers medical opinion evidence and prior administrative medical findings. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844. Because Plaintiff's applications were filed before the enactment of the new rules, the Court will apply the rules that were in effect at the time of her applications.

physician is not afforded controlling weight where it is not consistent with other substantial evidence contained in the record. *Halloran*, 362 F.3d at 32. (internal citations omitted).

When the ALJ does not afford controlling weight to the medical option of a treating physician, she must comprehensively consider several factors, the so-called "*Burgess* factors," and set forth the reasons for the weight assigned to the treating physician. *Id.* An ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted); *see also Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (failure to satisfy the treating physician rule "ordinarily requires remand to the ALJ for consideration of the improperly excluded evidence, at least where the unconsidered evidence is significantly more favorable to the claimant than the evidence considered"). However, remand is not required where the application of the correct legal principles to the record could lead only to the same conclusion. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (if a review of the record assures the court "that the substance of the treating physician rule was not traversed," *i.e.*, if the record provides "good reasons" for assigning less than controlling weight to it, the ALJ's decision should be affirmed).

Here, the ALJ considered several medical opinions issued by Plaintiff's treating physicians both before and after Plaintiff's alleged disability onset date. Plaintiff's biggest point of contention are the opinions of her treating physician, Dr. Winston Douglas, M.D. Tr. 23-25. It should be first noted that Dr. Douglas treated Plaintiff on a monthly basis for the period of at least three and a half years from January 2015 until mid-2018 for her disabling physical and mental conditions, such as her back disorder, post-traumatic stress disorder (PTSD), major depression, lupus, fibromyalgia, anxiety disorder, migraines, and others. Tr. 720-55, 778-38, 1084-99. During the course of treatment, Dr. Douglas issued three opinions – in June 2015, January 2016, and March

2018 – in which he identified Plaintiff's functional limitations stemming from her physical and mental impairments. Tr. 489-93, 756-57, 1079-83. Even though the ALJ considered all three opinions in her decision, she, nonetheless, assigned various degrees of weight to each opinion.

Specifically, the only opinion of record that the ALJ assigned significant weight to was the portion of Dr. Douglas' January 2016 opinion that related to Plaintiff's physical functioning because the ALJ believed that Dr. Douglas' determination of Plaintiff's moderate limitations in her ability walk, stand, lift, carry, push, pull, and use stairs was consistent with the overall medical evidence. Tr. 24. The ALJ assigned reduced weight to the mental portion of the opinion that identified Plaintiff's moderate limitations in her ability to maintain attention and concentration, and function in a work setting because, according to the ALJ, they were inconsistent with Plaintiff's mental status examinations, clinical findings, and activities of daily living. Tr. 24. As for Dr. Douglas' June 2015 and March 2018 opinions, the ALJ assigned them "very little" weight because she found them to be inconsistent with each other, as well as with Dr. Douglas' January 2016 opinion and the other evidence contained in the record. Tr. 24-25.

The Court finds that the ALJ's consideration of Dr. Douglas' opinions was improper. First, aside from noting the inconsistency of the June 2015 and March 2018 opinions, the ALJ did not provide any explanation as to what made them inconsistent with each other, with the January 2016 opinion, and with the record as a whole, nor did she cite to specific evidence to refute the findings made by Dr. Douglas in both opinions. *See Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015) (summary order) ("the ALJ's conclusory, one-sentence explanation for his decision to reject [the treating physician's] opinion did not fulfill his obligation to provide[ ] good reasons for the weight given to that opinion") (internal citations and quotations omitted); *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (summary order) (contradictions in the record cannot be

7

resolved arbitrarily and the ALJ's remarks that the opinion of plaintiff's treating physician was not consistent with the record does not satisfy the ALJ's duty to provide "good reasons" for rejecting a treating physician's opinion). Similarly, the ALJ's mentioning of Dr. Douglas' "expertise, [and] his treating relationship with the claimant" falls short of the ALJ's responsibility to explicitly discuss the remaining *Burgess* factors, such as the frequency, nature, length and extend of Dr. Douglas' treatment of Plaintiff. *See Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (the ALJ's failure to explicitly consider the frequency, length, nature, and extent of plaintiff's treatment by a physician who continuously monitored plaintiff's treatment for over two years was a ground for remand).

What is more, in her analysis of June 2015and March 2018 opinions, the ALJ noted several times that they were in the form of a check-box opinion, and, as such, provided minimal explanation and support for Plaintiff's severe restrictions identified by Dr. Douglas. Tr. 24-25. Even though the ALJ did not explicitly state that she was discounting both opinions simply because of their form, her mentioning of their check-box form four times during her analysis, makes it apparent that the form of both opinions was definitely a factor that weighed heavily in her decision to discount them. It is true that the June 2016 and March 2018 opinions were in the form of a check-box questionnaire, but so was Dr. Douglas' January 2016 opinion, which the ALJ afforded significant weight. Tr. 489-93, 756-57, 1079-83. The ALJ did not hesitate to provide significant weight to the potion of the January 2016 opinion and rely on Dr. Douglas' findings that supported her RFC determination, while at the same time discounting the other two opinions that contained more restrictive limitations because their narrative form provided minimal explanation for the restrictions Dr. Douglas identified. Tr. 24-25.

This was improper because it has been well-recognized that "the usefulness of [a check box] form should be determined by deciding whether the medical opinion expressed is relevant to a determination of disability and then assessing what basis the provider would have in deciding which box to 'check.'" *Czerniak v. Berryhill*, No. 17-CV-6123 (JWF), 2018 WL 3383410, at *3 (W.D.N.Y. July 11, 2018); *see also Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *3 (W.D.N.Y. Mar. 15, 2019) (the opinion of a treating physician who had a lengthy course of relationship with plaintiff could not be discredited because it was in the form of a check box opinion). Here, Dr. Douglas was Plaintiff's treating physician, who, along with his staff, treated Plaintiff for a period of over three years on a regular and continuous basis. As a result of such consistent treatment, Dr. Douglas formed his opinion as to Plaintiff's functional limitations during the course of Plaintiff's treatment, which he memorialized in narrative form in the three opinions contained in the record. Therefore, rejecting Dr. Douglas' otherwise relevant opinions because their form provided minimal support for the restrictive findings identified in both opinions was improper. *See Ruiz v. Saul*, No. 18-CV-6563-MJP, 2020 WL 1465859, at *5 (W.D.N.Y. Mar. 26, 2020) ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.") (internal citations omitted).

Moreover, that the ALJ's commented on both opinions' check-box form raises serious questions about genuineness of her reasons to discount the more restrictive findings contained in both opinions. Notably, the ALJ provided significant weight to Dr. Douglas' January 2016 opinion, which was the only opinion in the record that did not contain a detailed explanation of the exact nature of Plaintiff's functional abilities and limitations. It is not to say that the January 2016 opinion was inconsistent with the other two Dr. Douglas opinions or the record, however, it

identified Plaintiff's limitations in general terms that have previously been recognized as vague if not supported by additional information.  *See Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 487 (S.D.N.Y. 2018) ("[T]he Second Circuit has held that when compiling an RFC from the record, an ALJ may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information.") (internal citations omitted).  Since the ALJ discounted Dr. Douglas' June 2015 and March 2018 opinions, as well we all other opinions of record, her reliance on the only opinion that outlined Plaintiff's limitations in vague terms and formulating the Plaintiff's RFC based on such opinion was not supported by additional medical findings.  While the January 2016 opinion indicated that Plaintiff was moderately limited in her ability to walk, stand, lift, carry, push, pull, and climb stairs, Dr. Douglas' June 2015 and March 2018 opinions identified Plaintiff's physical and mental limitations with more specificity.  In fact, both opinions translated the rather vague explanation of Plaintiff's abilities listed in the January 2016 opinion into specific abilities, and identified the exact amount of time she could sit or stand during the workday before needing to change positions, the weight she could lift and carry, the need for breaks, and other limitations.  Tr. 489-93, 756-57, 1079-83.

What is more, the ALJ's analysis is flawed because Dr. Douglas' June 2015 and March 2018 opinions were not only consistent with each other and with the January 2016 opinion, but were also consistent with the rest of the record.  Both opinions identified Plaintiff's limitations of a similar, if not identical, duration, and indicated that Plaintiff was limited in sitting – either three or four hours cumulatively in an eight-hour workday, standing and walking – two hours in an eight-hour workday, and lifting and carrying – frequently or occasionally lift and carry less than ten pounds, rarely ten pounds, and never more than ten pounds of weight.  Tr. 490-92, 1079-81.  Dr. Douglas indicated that Plaintiff's symptoms were aggravated by prolonged sitting, standing,

walking, lifting, pushing, pulling, as well as by her depression. *Id.* In both opinions Dr. Douglas opined that Plaintiff needed to get up every hour for either five to ten minutes, or twenty minutes at a time, and his March 2018 opinion specified that Plaintiff needed to walk around every thirty minutes for three minutes. Tr. 490-93, 1080-82. Similarly, both the June 2015 and March 2018 opinions provided that Plaintiff's symptoms would cause Plaintiff to have unscheduled breaks during the day either every hour to an hour and a half, or every thirty to forty-five minutes, with the breaks lasting between three to ten minutes. *Id.* Lastly, both opinions identified that Plaintiff would likely be absent from work for two to three days per month. *Id.*

Dr. Douglas' diagnoses provided in the three opinions, which consisted of fibromyalgia, systemic lupus, anxiety disorder, PTSD, COPD, back disorder, major depression disorder, joint pain in shoulders and low back, were consistent with notes of his examination when he repeatedly noted Plaintiff's restricted range of motion and pain in her lower back and hips, joint pain, "massive tenderness" in her joints, difficulty maintaining balance, use of a cane to ambulate, depression, and increased anxiety. Tr. 720-727, 731-32, 739-40, 751-754, 782, 788-95, 797, 802, 805, 810, 813, 819, 823, 827, 835, 837, 1086. Dr. Douglas' treatment records were also consistent with physical and mental limitations identified by Plaintiff's other treatment providers. Specifically, Dr. Sandana noted that Plaintiff's pain was generated by many tender points in her back, neck, chest, elbows, and hips, and opined that Plaintiff had an undifferentiated connective tissue disease, possibly lupus, as well as fatigue, leukopenia, fibromyalgia, and headaches. Tr. 771. Additionally, the record contains an employability assessment completed by Plaintiff's treating physician Dr. Glick, in which he diagnosed Plaintiff with chronic low back pain, joint pain, and depression, and identified that her lumbar disc, chronic pain, depression, and possible

11

lupus would cause Plaintiff permanent limitations.[6]  Tr. 441-43, 459.   Dr. Glick also noted that Plaintiff used a cane, had a left foot drop, and was very limited in her ability to lift, carry, push, pull, climb, and function in a work setting, and moderately limited in walking, and maintaining attention and concentration.  Tr. 443, 460.  He further opined that Plaintiff was able to maintain only part-time employment, had limitations in walking, standing, sitting, and was unable to bend, crawl, or stoop.  Tr. 459.

The Court finds that ALJ's disregard of opinions of Plaintiff's treating providers was particularly concerning in light of the ALJ's RFC determination that limited Plaintiff to light work as defined by the regulations with occasional stooping, crouching, climbing, and concentrated exposure to extreme heat, cold, dust, fumes, odors, gases, and other irritants.  Tr. 21.  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  But Dr. Douglas found that Plaintiff was able to sit no more than four hours and stand no more than two hours in an eight-hour day, and was able to only rarely, as opposed to frequently, lift 10 pounds at a time, and never lift more than 10 pounds.  Tr. 1081.  Dr. Glick opined that Plaintiff was not able to lift more than five pounds, and could not perform work that required any bending, crawling, stooping,

---

[6] The ALJ afforded "very little weight" to Dr. Glick's opinions because they were inconstant with the rest of the record, issued prior to the alleged disability onset date, and contained conclusions on issues reserved to the Commissioner.  Tr. 25.  The Court finds that discounting Dr. Glick's opinion based on their date was not proper because "a treating physician's opinion need not be rejected solely because it predates the relevant time period."  *Mura v. Colvin,* No. 16-CV-6159P, 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017) (collecting cases).  Additionally, the mere fact that an opinion may contain conclusions reserved to the Commissioner's determination does not mean that the ALJ can disregard the rest of the findings made by a claimant's physician.  *See Snell,* 177 F.3d at 133 (the fact that the ultimate finding of whether a claimant is disabled is reserved to the Commissioner "means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added).

or high stress jobs. Tr. 399. Therefore, the medical opinions of record that have been discounted by the ALJ seriously question the ALJ's determination of whether Plaintiff could perform light work that she identified in the RFC, and instead, align with Dr. Douglas' two discounted opinions. *See Manuel v. Comm'r of Soc. Sec.*, No. 1:19-CV-00023 EAW, 2020 WL 2703442, at *4 (W.D.N.Y. May 26, 2020) (the ALJ's failure to consider the treating physician's opinion was not harmless because the restrictive limitations identified by the physician could have resulted in a finding of disability or at a more restrictive RFC finding if given proper consideration by the ALJ).

The ALJ's error was not harmless in light of testimony provided by the VE, who testified that an individual who misses 6 to 8 days per year, or who would be off-task for more than 9%, or 37 to 38 minutes over and above scheduled breaks, would be unable to maintain employment. Tr. 73. The VE also testified that competitive employment would not be available for an individual who would be able to sit for four hours and stand/walk for two hours out of an eight-hour day. Tr. 74. Considering that Dr. Douglas opined that Plaintiff's limitations would cause her to be absent two to three days per month, and that she would be limited to four hours of sitting and two hours of standing/walking, the ALJ's proper consideration of Dr. Douglas' opinions becomes crucial to the outcome of Plaintiff's disability case. *See Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015) (the ALJ's failure to provide adequate reasons for rejecting the opinion of plaintiff's treating physician was not harmless in light of a VE's testimony that no jobs would be available for an individual who had to miss four or more days of work per month).

As set forth above, Plaintiff has identified several additional reasons why she contends the matter should be remanded. ECF No. 15-1. However, because the Court has determined that remand of this matter for further administrative proceedings is necessary, it declines to address Plaintiff's remaining arguments. *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL

7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to address Plaintiff's remaining arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined that remand was warranted).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 22) is DENIED. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: April 10 2021
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court